UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DALE JUDD,<br><br>*Plaintiff*,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, Local 32BJ *et al.*,<br><br>*Defendants*. | Civil Action No. 19-2925 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dale Judd, proceeding pro se, sues to challenge the loss of his job as a general house cleaner at the headquarters of the Department of Justice ("DOJ building"), a position he held for more than a quarter century. Plaintiff was the odd man out when Melwood Horticultural Training Center, Inc. ("Melwood") took over the cleaning contract at the DOJ building. Plaintiff sues both Melwood and the Service Employees International Union, Local 32BJ ("the Union"). He alleges that Melwood violated its Collective Bargaining Agreement ("CBA") with the Union and that the Union breached its duty of fair representation by failing to protect Plaintiff's rights. Melwood and the Union (collectively, "Defendants") each move to dismiss Plaintiff's claims as barred by the National Labor Relation Act's six-month statute of limitations.

For the following reasons, the Court will **GRANT** Defendants' motions to dismiss but will give Plaintiff an opportunity to file an amended complaint.

1

## I. BACKGROUND

The following factual allegations are drawn from the complaint, as well as documents incorporated in Plaintiff's pleadings by reference, or are subject to judicial notice. For purposes of Defendants' motions to dismiss, the Court accepts Plaintiff's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Plaintiff worked for more than twenty-five years as a general house cleaner at the DOJ building. Dkt. 1 at 2. In 2017, Melwood was awarded the janitorial services contract that included the DOJ building through the AbilityOne program, which provides employment on federal government contracts to people with disabilities. Dkt. 15-2 at 5 (Ex. 5), *see also* AbilityOne, AbilityOne.gov (last visited September 23, 2020). Although most of the workforce on the new contract was to comprise disabled people hired by Melwood, the contract permitted Melwood to retain workers without disabilities for up to 25% of the work hours. Dkt. 15-2 at 5 (Ex. 5). Pursuant to that exception, Melwood and the Union agreed that a small number of employees who worked for the prior contractor, R&R Building Services, would be retained. *Id.* Melwood recognized the Union as the representative of those employees, and in June 2017, Melwood and the Union negotiated a CBA and corresponding Neutrality and Card Check Agreement ("NCCA"). Dkt. 1 at 2–3; Dkt. 8-4 at 1–2 (Ex. A).

Plaintiff alleges that under the CBA, he should have been among the employees retained to work at the DOJ building based on his seniority and his status as a union steward. Dkt. 1 at 4–5 (Compl. ¶¶ 7–11). Section 7.1 of the CBA provided that an employee's seniority, as relevant for the order of layoffs, "shall be computed from the date on which he/she is hired by the Employer or his/her date of employment at the Department of Justice, whichever is longer" and that "[o]ne shop steward per shift shall have super seniority for purposes of layoff and recall."

Dkt. 13-1 at 8 (Ex. 1).  The NCCA, however, provided that only two general cleaners would be retained at the DOJ building and that those two would be chosen by seniority among only those cleaners holding top-secret clearances.  Dkt. 8-4 at 2 (Ex. A).  Because Plaintiff did not hold a top-secret clearance, he was ineligible to continue to work at the DOJ building under the NCCA.  *Id.*  Plaintiff further alleges that once it became clear that he could not work at the DOJ building, the Union promised him a position at a Secret Service building.  Dkt. 15 at 3–4.  But the Union went back on that promise and later told Plaintiff that he was being assigned to a Federal Bureau of Investigation building, where his pay would be cut from more than $20 per hour to $12.33 per hour.  Dkt. 1 at 7–8 (Compl. ¶¶ 18–22).  Melwood took over janitorial services at the DOJ building on October 1, 2017, and Plaintiff lost his job at the DOJ building at that time.  Dkt. 1 at 4 (Compl. ¶ 4); Dkt. 8-1 at 1; Dkt. 8-5 at 1 (Ex. B).

      Plaintiff alleges that Melwood and the Union violated the CBA and that the Union breached its duty of fair representation by amending the CBA with the NCCA in a manner that was prejudicial to him and by failing to retain him at the DOJ building based on his seniority.  Dkt. 1 at 4–5 (Compl. ¶¶ 7–11).  On November 2, 2017, Plaintiff, through a non-lawyer representative, filed a charge against Melwood and the Union with the National Labor Relations Board ("NLRB").  Dkt. 15-2 at 1–4 (Exs. 1–4).  On February 28, 2018, the acting director for the NLRB's Region 5 wrote to Plaintiff's representative "refusing to issue [a] complaint" with respect to Plaintiff's charge against the union.  *Id.* at 6 (Ex. 5).  Because "the Union's actions were rational, and not arbitrary, discriminatory, or in bad faith," the acting director found that "further proceedings [were] not warranted."  *Id.*  In a substantially similar letter sent the same day, the acting director also declined to issue a complaint against Melwood.  *Id.* at 9 (Ex. 6).

On January 18, 2018, Plaintiff filed a race discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 11–12 (Ex. 8). On February 13, 2018, the EEOC dismissed Plaintiff's charge. *Id.* at 13 (Ex. 9). The EEOC notified Plaintiff that he had 90 days to file a lawsuit alleging discrimination under federal law in either federal or state court. *Id.*

In March 2018, Plaintiff's representative submitted a variety of correspondence to the NLRB, including an administrative appeal. *Id.* at 14–21 (Exs. 14 & 15); *id.* at 24–25 (Ex. 17). Ten months later, on January 24, 2019, Plaintiff filed an amended charge, and on May 31, 2019, the Region 5 acting director again declined to issue a complaint. *Id.* at 28–30 (Ex. 21). The acting director explained that the amended charge was subject to the six-month statute of limitations in § 10(b) of the NLRA. *Id.*; *see also* 29 U.S.C. § 160(b) ("[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the [NLRB].") ("§ 10(b)"). Because the amended charge was filed more than a year after the alleged unfair labor practices occurred, the charge was time-barred. Dkt. 15-2 at 28–30 (Ex. 21). On June 13, 2019, Plaintiff filed another administrative appeal. *Id.* at 31–32 (Ex. 22). On July 16, 2019, the NLRB General Counsel denied Plaintiff's appeals. *Id.* at 35–36 (Ex. 24). On October 8, 2019, the General Counsel denied Plaintiff's motion for reconsideration as untimely. *Id.* at 40–41 (Ex. 26).

Plaintiff filed this lawsuit on September 30, 2019. Melwood and the Union each moved to dismiss. Dkt. 8; Dkt. 11. Plaintiff filed oppositions to those motions. Dkt. 13; Dkt. 15. Defendants replied. Dkt. 14; Dkt. 16. Plaintiff then filed a pair of sur-reply briefs. Dkt. 17; Dkt. 18. The motions to dismiss are accordingly fully briefed and ripe for decision.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim to relief,' and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original) (internal citation omitted).  The complaint, however, need not include "detailed factual allegations" to withstand a Rule 12(b)(6) motion.  *Twombly*, 550 U.S. at 555.  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level."  *Id.* at 555–56.

In assessing a Rule 12(b)(6) motion, a court may consider only "the facts contained within the four corners of the complaint," *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).  In addition, where a plaintiff proceeds pro se, the Court must consider other documents the plaintiff has filed in the case, including filings responsive to the motion to dismiss.  *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a pro se litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss.") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).

5

## III.  DISCUSSION

A.    **Hybrid § 301/Fair Representation Claims**

Defendants argue that Plaintiff's principal claims are subject to § 10(b)'s six-month statute of limitations.  Dkt. 8-1 at 3–4; Dkt. 11 at 6–8.  They further contend that Plaintiff's claims accrued on October 1, 2017, when Melwood took over the contract at the Department of Justice and removed Plaintiff from his position at that worksite or, at the latest, on November 2, 2017, when Plaintiff filed his initial charge with the NLRB.  Dkt 8-1 at 4; Dkt. 11 at 7–8.  Because far more than six months elapsed between either of those dates and when Plaintiff filed his complaint in this action on September 30, 2019, Defendants assert that Plaintiff's claims are time-barred and must be dismissed.

Because Plaintiff is proceeding pro se, the Court will construe his pleadings liberally. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 (D.C. Cir. 2015) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").  Plaintiff's opposition briefs can be read as contending that the statute of limitations was tolled during the pendency of the charges he filed with the NLRB.  *See* Dkt. 13 at 6–8 (alleging that the NLRB "allowed their Investigator to hover over and cripple Plaintiff's efforts to bring his charges"); Dkt. 15 at 2–3 (arguing that because Plaintiff timely filed his initial charge with the NLRB, this lawsuit should be deemed timely as well).

Because invocation of the statute of limitations is an affirmative defense, courts are hesitant to grant pre-answer motions to dismiss on statute-of-limitations grounds.  *See Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996) (per curiam).  A statute-of-limitations defense may be raised under Rule 12(b)(6) only "when the facts that give rise to the defense are clear from the face of the complaint," *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578

6

(D.C. Cir. 1998), and a district court should grant a motion to dismiss on statute-of-limitations grounds only if it is satisfied that the claim "is conclusively time-barred," *Firestone*, 76 F.3d at 1209; *see also Jones v. Changsila*, 271 F. Supp. 3d 9, 24 (D.D.C. 2017); *Perrow v. District of Columbia*, 435 F. Supp. 3d 9, 12 (D.D.C. 2020); *Friedman v. Gov't of Abu Dhabi, United Arab Emirates*, 2020 WL 2496946, at *12 (D.D.C. May 14, 2020); *Stewart v. Int'l Union, Security, Police and Fire Professionals of Am.*, 271 F. Supp. 3d 276, 280 (D.D.C. 2017). This is such a case.

Whether § 10(b)'s six-month limitations period applies in this case and whether the limitations period may be tolled during the pendency of administrative proceedings are both questions of law appropriate for resolution on a motion to dismiss, and other decisions in this district have resolved § 10(b) timeliness defenses at the motion-to-dismiss stage. *See Washington v. AlliedBarton Sec. Servs., LLC*, 289 F. Supp. 3d 137, 144 (D.D.C.), *aff'd*, 748 F. App'x 348 (D.C. Cir. 2018); *Stewart*, 271 F. Supp. 3d at 280–82; *Williams v. Amalgamated Transit Union Local 689*, 245 F. Supp. 3d 129, 137–39 (D.D.C. 2017), *aff'd*, No. 17-7076, 2017 WL 4217248 (D.C. Cir. Aug. 23, 2017); *Mercer v. Inter-Con Sec. Sys., Inc.*, 82 F. Supp. 3d 250, 254 (D.D.C. 2015). Here, all of the relevant dates are clear from the face of the complaint, the documents incorporated by reference therein, and the exhibits attached to Plaintiff's filings. In addition, even if Plaintiff had not included those exhibits, the agency materials related to the charges Plaintiff filed with the NLRB and the EEOC are public documents subject to judicial notice. *See Vasser v. McDonald*, 228 F. Supp. 3d 1, 10–11 (D.D.C. 2016) (taking judicial notice of an agency decision to determine the date on which the plaintiff filed her administrative claim). Plaintiff, moreover, does not even hint at a basis for tolling that might turn on a disputed fact.

Under these circumstances, there is no reason to delay resolution of the parties' dispute over whether Plaintiff's complaint was timely.

Before turning to Plaintiff's tolling argument, the Court must first address the threshold issue of whether § 10(b)'s six-month limitations period applies in this case.  The Supreme Court has held that so-called "hybrid § 301/fair representation" claims are subject to the NLRA's six-month statute of limitations.  *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 165, 172 (1983).  Ordinarily, an employee who seeks to sue his employer for breach of a collective bargaining agreement must first "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."  *Id.* at 163.  An exception to that rule allows employees to sue immediately when they also allege that their union breached its duty of fair representation in a way that undermined the grievance or arbitration procedure.  *Id.* at 164–165.  A hybrid suit, "as a formal matter, comprises two causes of action."  *Id.* at 164.  First, the plaintiff sues his employer for breach of the CBA under § 301 of the Labor Management Relations Act ("LMRA").  *Id.*  Second, the plaintiff sues his union under the NLRA for breaching the duty of fair representation, alleging that the union "act[ed] in such a discriminatory, dishonest, arbitrary, or perfunctory fashion" that private grievance or arbitration procedures were rendered ineffective for vindicating the employee's rights.  *Id.*  The two aspects of the suit are "inextricably interdependent," forming a "direct challenge to the private settlement of disputes" between the employer and union under the CBA.  *Id.* at 164–65 (citation and quotation marks omitted).  Although there is no federal statute of limitations directly applicable to § 301 claims under the LMRA, the Supreme Court has held that hybrid claims are subject to the six-month limitations period in NLRA § 10(b).  *Id.* at 172*; see also Cephas v. MVM, Inc.*,

520 F.3d 480, 484–85 (D.C. Cir. 2008) (holding that § 10(b)'s limitations period applies to hybrid claims but not to pure § 301 claims, which are governed by state statutes of limitations).

Although not explicitly labeled as such, Plaintiff's complaint asserts a classic hybrid § 301/fair representation claim. Plaintiff names both Melwood and the Union as defendants. Dkt. 1 at 1. He alleges that Melwood breached the CBA by wrongfully terminating him from his position working at the DOJ building despite his seniority. *Id.* at 5–6 (Compl. ¶¶ 9–12). And, in the same count, he alleges that the Union breached its duty of fair representation by failing to protect his interests in its negotiations with Melwood. *Id.* (Compl. ¶¶ 11–12). Plaintiff does not expressly invoke § 301, but his effort to enforce the CBA is, by its nature, a claim under that provision. *See Washington*, 289 F. Supp. 3d at 140–142 (construing pro se plaintiff's CBA-related contract claims against employer as falling under § 301). Plaintiff's claims against Melwood and the Union are therefore hybrid, forming one "inextricably intertwined" challenge to both Defendants' roles in the events that led to the loss of his job. *DelCostello*, 462 U.S. at 164. Those hybrid claims are subject to § 10(b)'s six-month limitations period. *Id.* at 172.

Unless the statute of limitations was tolled while Plaintiff pursued his claims before the NLRB, he filed suit too late. In hybrid actions, the six-month limitations period "begins to run 'from the later of (1) when the employee discovers, or in the reasonable exercise of diligence should have discovered, the acts constituting the alleged breach by the employer, or (2) when the employee knows or should have known of the last action taken by the union which constituted the alleged breach of its duty of fair representation.'" *Mercer*, 82 F. Supp. 3d at 254 (quoting *Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 184 (D.D.C. 2013)) (internal brackets omitted). An "unbroken string of precedent," moreover, "supports the proposition that when a plaintiff accuses his union of a breach of the duty of fair representation in a charge filed

9

with the NLRB, he has by then, as a matter of law, 'discovered' the grounds for his hybrid § 301 claim." *Simmons v. Howard Univ.*, 157 F.3d 914, 916 (D.C. Cir. 1998).  Here, the statute of limitations likely began to run on or before October 1, 2017, when Melwood took over the cleaning contract at the DOJ building and Plaintiff lost his job there, at which point Plaintiff had discovered both Melwood's alleged breach of the CBA and the Union's alleged breach of the duty of fair representation, through the negotiation of the NCCA.  Dkt. 1 at 4 (Compl. ¶ 4).  But, at the very latest, under binding D.C. Circuit precedent, the statute of limitations began to run "as a matter of law" on November 2, 2017, when Plaintiff filed his charges against both Defendants with the NLRB.  Dkt. 15-2 at 1–4 (Exs. 1–4).  Because Plaintiff did not file this suit until almost two years later, on September 30, 2019, the action was commenced far beyond the six-month limitations period.

In response, Plaintiff argues that the Court should toll the statute of limitations for the period during which he was pursuing his rights before the NLRB.  Dkt. 13 at 6–8; Dkt. 15 at 2–3.  Because Plaintiff brought charges with the NLRB within about a month of losing his position working at the DOJ building, and because his administrative appeals were not finally resolved until October 8, 2019, *see* Dkt. 15-2 at 40–41 (Ex. 26), which was several days after he filed this lawsuit, tolling the statute of limitations for the duration of the administrative process would save Plaintiff's claims.  Plaintiff is correct, moreover, that the statute of limitations in § 10(b) is non-jurisdictional and thus subject to equitable tolling doctrines.  *See Stewart*, 271 F. Supp. 3d at 281.  The ground that he offers for tolling the statute of limitations, however, fails as a matter of law.

The Court's equitable power to toll the statute of limitations should be "exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  The statute of limitations for a hybrid § 301/fair representation

claim may be tolled "when the plaintiff is fraudulently induced to delay filing his suit, or in good faith attempts to exhaust grievance procedures." *Simmons*, 157 F.3d at 917 (citation omitted). Although the D.C. Circuit has yet to address the issue, several other courts of appeals have specifically (and unanimously) held that "the filing of an unfair labor practice charge with the NLRB does not toll the statute of limitations on a hybrid § 301/fair representation action arising out of the same nucleus of operative fact." *Arriaga-Zayas v. Int'l Ladies' Garment Workers' Union-P.R. Council*, 835 F.2d 11, 14 (1st Cir. 1987); *Conley v. Int'l Brotherhood of Elec. Workers, Local 639*, 810 F.2d 913, 916 (9th Cir. 1987) (holding "that the filing of an NLRB action does not toll section 10(b)'s application to section 301"); *Kolomick v. United Steelworkers of Am., Dist. 8*, 762 F.2d 354, 356 (4th Cir. 1985) (same); *Adkins v. Int'l Union of Elec. Workers*, 769 F.2d 330, 335–36 (6th Cir. 1985) (same); *Aarsvold v. Greyhound Lines, Inc.*, 724 F.2d 72, 73 (8th Cir. 1983) (same); *see also Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 49 (2d Cir. 2014) (relying on *Kolomick* in holding that the statute of limitations for a duty of fair representation claim was not tolled during the pendency of state-court litigation).

      This body of caselaw is premised on the common-sense distinction between situations in which a plaintiff is required to exhaust administrative remedies before filing suit in court and situations in which a plaintiff has the option to proceed before an agency or in court. "Equitable tolling is most appropriate when the plaintiff is required to avail himself of an alternate course of action as a precondition to filing suit." *Conley*, 810 F.2d at 915. Tolling is unnecessary, however, when "a plaintiff pursues parallel avenues of relief," *Kolomick*, 762 F.2d at 356, or when exhausting administrative remedies is "merely optional," *Conley*, 810 F.2d at 916. Because the Supreme Court "has made it crystal clear that an employee whose interests have

been slighted by his union can simultaneously tread both administrative and judicial paths," the pendency of NLRB proceedings does not toll the statute of limitations. *Arriaga-Zayas*, 835 F.2d at 13 (citing *Vaca v. Sipes*, 386 U.S. 171, 185–86 (1967)). Tolling the limitations period for hybrid § 301/fair representation claims, moreover, would run counter to "the salutary policy favoring the prompt resolution of labor disputes," which underlies both Congress's enactment of § 10(b) and the Supreme Court's decision in *DelCostello*. *Kolomick*, 762 F.2d at 357 (citing *DelCostello*, 462 U.S. at 168). "There is no inherent inequity in the dual nature of" the NLRB and the courts holding concurrent jurisdiction over hybrid claims; "[t]o the contrary, the existence of two potential forums provides an aggrieved plaintiff with greater flexibility." *Id.*

The Court is persuaded by the logic of these decisions. When Plaintiff filed his charges with the NLRB in 2017, he could have just as easily filed suit in federal court, either instead of or in addition to his action before the Board. Plaintiff had the option to ride "parallel horses," *Arriaga-Zayas*, 835 F.2d at 14, but he chose to saddle only one, and it is now too late to revisit that decision. Allowing Plaintiff to file suit nearly two years after losing his job would undermine "the relatively rapid final resolution of labor disputes favored by federal law." *DelCostello*, 462 U.S. at 168. And although Plaintiff alleges that the NLRB's investigator was biased against him, Dkt. 13 at 6–8, he does not contend that the Board—or anyone else— "fraudulently induced [him] to delay filing his suit," *Simmons*, 157 F.3d at 917. The Court therefore holds that Plaintiff's filing of a charge with the NLRB did not toll the six-month statute of limitations for his federal lawsuit. Because that is the only ground on which he seeks to toll the statute of limitations, his hybrid § 301/fair representation claim is barred by § 10(b) as a matter of law.

B.     **Remaining Claims**

Although that resolves Plaintiff's primary claims, his filings can be read to raise a host of other issues.  Some of Plaintiff's filings read as though he seeks judicial review of the NLRB General Counsel's decision not to issue an administrative complaint against Defendants.  *See* Dkt. 15 at 12–13 ("[T]he General Counsel never encountered or reviewed Plaintiff's appeal case that was designed for his review.  Plaintiff is alleging that his claims did not receive the consideration mandated by the [NLRA.]")  But, although final NLRB adjudications on the merits are subject to judicial review, the General Counsel's decision not to file a complaint in a given case is an unreviewable "'prosecutorial' determination[]."  *N.L.R.B. v. United Food & Com. Workers Union, Local 23*, 484 U.S. 112, 130 (1987) ("'[P]rosecutorial' determinations [are] made solely by the General Counsel and . . . are not subject to review under the [NLRA].").  The Court thus lacks jurisdiction to review the General Counsel's decision not to issue a complaint based on Plaintiff's charges.

Next, Plaintiff's complaint might be construed as alleging that Melwood violated Title VII of the Civil Rights Act of 1964.  Dkt. 1 at 5–6 (Compl. ¶¶ 8–12).  In one of his sur-replies, Plaintiff asserts that "[t]his case involves the National Labor Relations Board . . . and not the Equal Employment Opportunity Commission," Dkt. 17 at 1, which would suggest that he is not asserting claims under Title VII.  But, even if Plaintiff wanted to bring such claims, they would be time-barred.  On February 13, 2018, the EEOC dismissed the charges that Plaintiff filed with the Commission and notified him that he had 90 days to file a lawsuit alleging discrimination under federal law in either federal or state court.  Dkt. 15-2 at 13 (Ex. 9).  The 90-day deadline is statutory, *see* 42 U.S.C. § 2000e–16(c), and "[c]ourts apply this limit strictly and will dismiss a suit for missing the deadline by even one day," *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir.

13

2007) (quotation marks omitted). Of course, Plaintiff missed the deadline by far more than one day. The EEOC sent Plaintiff the right to sue letter on February 13, 2018. Dkt. 15-2 at 13 (Ex. 9). Courts generally assume that the EEOC mails a decision on the same day it is issued and that a plaintiff receives the decision in the mail within either three or five days. *See Ruiz v. Vilsack*, 763 F. Supp. 2d 168, 171 (D.D.C. 2011) (collecting cases). Even applying the more generous five-day rule, by the Court's count some 589 days elapsed between Plaintiff's receipt of the right-to-sue letter from EEOC on February 18, 2018 and his filing of this lawsuit on September 30, 2019. Like Defendants' § 10(b) defense, the failure to file a Title VII claim within the 90-day window is an affirmative defense, but, where the relevant facts are clear from Plaintiff's own pleadings, it is an affirmative defense that the Court may reach on a motion to dismiss under Rule 12(b)(6). *Odutola v. Branch Banking & Tr. Co.*, 321 F. Supp. 3d 67, 73–74 (D.D.C. 2018); *Summers v. Howard Univ. Hosp.*, 300 F. Supp. 3d 268, 270 (D.D.C. 2018); *Charles v. Brennan*, 174 F. Supp. 3d 97, 102–04 (D.D.C. 2016); *Horsey v. Harris*, 953 F. Supp. 2d 203, 210 (D.D.C. 2013). Here, Plaintiff filed his complaint long after the deadline to sue under Title VII had passed, and he does not even suggest any reason that the deadline could have been equitably tolled. Any employment discrimination claims in his complaint are thus time-barred.

Nor does the complaint adequately allege claims for defamation or intentional infliction of emotional distress. Dkt. 1 at 7–8 (Compl. ¶¶ 17–23). To state a claim for defamation under D.C. law, a plaintiff must plead "'four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of

law irrespective of special harm or that its publication caused the plaintiff special harm.'" *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140–41 (D.D.C. 2017) (quoting *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009)). Plaintiff's complaint does not allege facts sufficient to establish any of these elements. Plaintiff alleges that Defendants told him that they were transferring him and cutting his pay, Dkt. 1 at 7 (Compl. ¶ 18); that he received checks even after his employment had ceased as "a cover up involving employment violations," *id*. (Compl. ¶ 19); that Defendants offered him temporary employment at the DOJ building, which he took "as a threat based on a previous hostile encounter," *id*. at 7–8 (Compl. ¶ 20); and that Plaintiff was "ordered into a one-day orientation meeting with [Melwood]," *id*. at 8 (Compl ¶ 21). Although these claims all arguably involve some type of communication, Plaintiff does not allege that those statements were false, that they had a defamatory meaning, or that they were published to any third-party. Plaintiff's defamation claim fails as a matter of law.

       To state "a prima facie case of intentional infliction of emotional distress [under D.C. law], a plaintiff must show '(1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Williams v. District of Columbia*, 9 A.3d 484, 493–94 (D.C. 2010) (quoting *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003)). The conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. at 494 (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)). Plaintiff has not alleged any conduct by Defendants that comes even close to meeting that high standard. Although the Court understands why Plaintiff would be distressed about the loss of his job after more than twenty-five years, nothing about Defendants' conduct in negotiating the terms under

which Melwood would assume the cleaning contract for the DOJ building is "atrocious" or "utterly intolerable in a civilized society." *Id.* Even more to the point, to the extent that Plaintiff claims that Defendants behaved outrageously by breaching the CBA, any such claim is pre-empted by the LMRA. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." (citation omitted)). Plaintiff's intentional infliction of emotional distress claim therefore fails as a matter of law.

### C. Request for Leave to Amend

Finally, Plaintiff seeks leave to amend his complaint to bring additional tort claims against Melwood, Dkt. 15 at 13, and to fortify his hybrid § 301/fair representation claim, Dkt. 18 at 3. Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend his complaint once as a matter of course within 21 days of service of a Rule 12 motion to dismiss. Fed. R. Civ. P. 15(a)(1)(b). After that deadline has passed, a plaintiff may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court "should freely give leave when justice so requires." *Id.* But "leave to amend should be denied when amendment would be futile," *Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015), including when "the proposed claim would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

Plaintiff appears to have muddled the distinction between the two types of amendments. Melwood moved to dismiss on November 12, 2019, Dkt. 8, and the Union moved to dismiss on November 15, 2019, Dkt. 11. Plaintiff first mentioned the possibility of amending his complaint to add tort claims against Melwood in his opposition to the Union's motion to dismiss, which

Plaintiff filed on December 3, 2019.  Dkt. 15.  That filing came 21 days after Melwood's motion to dismiss and 18 days after the Union's motion to dismiss.  Dkt. 15.  At that time, Plaintiff could have simply filed an amended complaint as a matter of right.  But instead, quoting Rule 15(a)(2), he wrote that "[i]f the court should 'freely give leave' to the Plaintiff to amend his pleading, Plaintiff would add tort claims to address defendant employer's conduct and entrapment tactics in trying to lure Plaintiff in cashing fraudulent salary checks for work at the FBI work facility that he did not perform."  Dkt. 15 at 13.  Given the conditional wording of Plaintiff's statement, it is unclear whether he was seeking leave to amend his complaint or just indicating that he might seek leave at some time in the future.  Plaintiff next addressed the possibility of amending his complaint in his sur-reply to Melwood's motion to dismiss, which he filed on December 20, 2019.  Dkt. 18 at 3.  Once again, his wording was ambiguous, although it appears that he was simply giving notice that he might seek leave to amend at some later date: "If the court finds Plaintiff's complaint not properly cured within his filing and exhibits, Plaintiff will then request to the court and [sic] opportunity to amend his complaint."  *Id.*  Regardless of what he meant, by the time Plaintiff filed his sur-reply, more than 21 days had passed after the filing of the motions to dismiss, and he needed leave of the Court to file an amended complaint.

In any event, amendment to Plaintiff's complaint would likely be futile.  With respect to Plaintiff's hybrid § 301/fair representation claim, no more nuanced or better crafted pleading will change the fact that Plaintiff did not file his suit within the limitations period.  With respect to Plaintiff's proposed state-law tort claims, there is no such tort as "entrapment."  As noted above, to the extent these proposed claims would depend on showing that Melwood breached the CBA, moreover, they would be pre-empted by the LMRA.  *See Allis–Chalmers*, 471 U.S. at 220; *see also Jackson v. Teamsters Local Union 922*, 991 F. Supp. 2d 71, 78 (D.D.C. 2014) ("A plaintiff

. . . cannot wiggle out from under the shadow of the NLRA through clever pleading—for example, by framing a claim as a breach of contract rather than an unfair labor practice.").

But because Plaintiff is proceeding pro se and given his apparent confusion about his right to amend the complaint within 21 days of Defendants' motions to dismiss, the Court will permit Plaintiff to file a motion seeking leave to file an amended complaint within 30 days.  If Plaintiff elects to file such a motion, (1) he must attach to his motion a copy of his proposed, amended complaint; (2) he must also attach a redlined version of the proposed, amended complaint showing where he has made changes from his original complaint; and (3) his proposed, amended complaint must comport with the Court's conclusions in this opinion—he may not, for example, assert claims that are untimely or that are pre-empted by the LMRA.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motions to dismiss, Dkt. 8; Dkt. 11, and will **DISMISS** Plaintiff's complaint.  Plaintiff may file a motion for leave to file an amended complaint on or before October 23, 2020.  If Plaintiff fails to file such a motion by that date, the Court will enter final judgment dismissing this action.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 23, 2020